967 F.2d 590
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Philip D. ROBERTS; Lynn Roberts; Denny Delk; Karen Delk;
Jack T. Bell; Arthur B. Gauss, on behalf of
themselves and all others similarly
situated.; Plaintiffs-Appellees,
CUSTOM WELLHEAD SERVICES, INC. Appellant
v.
Werner HEIM; Gary E. Krause, Defendants.
 No. 92-15462.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 9, 1992.
Decided June 17, 1992.
 
 Before GOODWIN, SCHROEDER and BEEZER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Custom Wellhead appeals the order of the district court denying its motion to intervene into this highly complex securities fraud case pursuant to Fed.R.Civ.P. 24(a). An order completely denying a party the ability to intervene is appealable as a final order under 28 U.S.C. § 1291. We have jurisdiction and affirm.
 
 
 3
 In 1986 Custom Wellhead purchased two promissory notes previously executed by Cardinal Oil, a defendant in the underlying controversy, in favor of Hemisphere Licensing Corp., also a defendant. The notes are valued at 9.5 million dollars. As security for the notes, Custom Wellhead acquired an interest in subscription notes executed by some of the plaintiff limited partners in favor of Cardinal Oil. The ability of defendants and their assignees to enforce these subscription notes is the subject of declaratory relief sought in the consolidated cases. A detailed description of the underlying controversy can be found in Roberts v. Heim, 670 F.Supp. 1466 (N.D.Cal.1987).
 
 
 4
 On December 23, 1988, the district court entered an order in Roberts v. Republic, one of the consolidated cases, enjoining the parties and all those acting in active concert and participation with them from taking any steps to enforce or collect on the promissory notes and subscription agreement obligations at issue in the litigation. On March 19, 1991, Custom Wellhead voluntarily agreed that during the pendency of the consolidated cases it would not proceed outside of the district court in the Northern District of California to enforce its rights under the notes.
 
 
 5
 On January 6, 1992, Custom Wellhead moved to intervene. The motion was submitted to a special master who recommended that it be denied. On February 19, 1992, the district court adopted the special master's recommendation and findings and denied the motion to intervene for being untimely. The decision to deny a motion to intervene as a matter of right is reviewed de novo, except for the question of the timeliness of the motion which is reviewed for abuse of discretion. United States v. Oregon, 913 F.2d 576, 587 (9th Cir.1990), cert. denied sub nom., Makah Indian Tribe v. United States, 111 S.Ct. 2889 (1991).
 
 
 6
 "[T]he factors usually weighed in determining timeliness are the stage of the proceedings, the reasons for and length of the delay, and the prejudice to other parties if intervention is permitted." Petro Stops Northwest v. Continental Oil Co., 647 F.2d 1005, 1009 (9th Cir.), cert. denied sub nom., Conoco, Inc. v. Petro Stops Northwest, 454 U.S. 1098 (1981). See also County of Orange v. Air California, 799 F.2d 535, 537 (9th Cir.1986), cert. denied sub nom., Irvine v. County of Orange, 480 U.S. 946 (1987); Alaniz v. Tillie Lewis Foods, 572 F.2d 657, 659 (9th Cir.), cert. denied sub nom., Beaver v. Alaniz, 439 U.S. 837 (1978).
 
 
 7
 The present litigation was pending at the time Custom Wellhead negotiated the purchase of the notes. It is likely that Custom Wellhead knew or should have known about the controversy as early as 1988 when the court's order enjoining enforcement of the notes was entered. It is undeniable that Custom Wellhead was on notice of the implications of this litigation in early 1991 when it voluntarily bound itself under the court's injunction. In spite of these facts, Custom Wellhead did nothing to protect its interests and did not seek intervention until January 6, 1992, only weeks before trial was scheduled to commence.
 
 
 8
 The last two months before trial in a six-year-old securities case is late in the proceedings for a party to seek intervention. While an extension of the trial date by five months (for reasons unrelated to Custom Wellhead) eased the likely prejudice to be suffered by the parties, it did not eliminate it. Litigation strategies had been set and significant settlement agreements had been made.
 
 
 9
 Using emphatic language, the district court found no justification for Custom Wellhead's delay in seeking intervention. The court indicated that unreasonable delay was the most important reason for its decision. "A party seeking to intervene must act as soon as he 'knows or has reason to know that his interests might be adversely affected by the outcome of the litigation.' " United States v. Oregon, 913 F.2d at 589 (quoting United States v. City of Chicago, 870 F.2d 1256, 1263 (7th Cir.1989)). See also Alaniz, 572 F.2d at 659 ("Thus, to prevail appellants must convincingly explain their delay.").
 
 
 10
 We find no abuse of discretion in denying as untimely Custom Wellhead's motion to intervene in this highly complex case. AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3